## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **MICHAEL W. ORR** | ) | |
| **9697 Missaukee Lane** | ) | |
| **Haslett, MI 48840** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **ALBERTO GONZALES** | ) | |
| **United States Department of Justice** | ) | |
| **950 Pennsylvania Avenue, NW** | ) | |
| **Washington, DC 20530-0001** | ) | |
| | ) | |
| **Attorney General of the** | ) | |
| **United States, sued in his** | ) | |
| **official capacity** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## EMPLOYMENT DISCRIMINATION COMPLAINT

(Discriminatory and Retaliatory Failure to Promote and Hostile Environment)

### I.  PARTIES

1.      Michael ("Mick") Orr, a continental American, is a longstanding veteran of the United States Marshall Service.  Defendant Alberto Gonzales is the Attorney General of the United States, and is sued in his official capacity only.

### II.  JURISDICTION AND VENUE

2.      The Court has jurisdiction of this matter pursuant to 42 U.S.C. § 2000 et. seq and 28 U.S.C. 1331, 1343(a).  Venue is proper in the District of Columbia pursuant to 42 U.S.C. § 2000e-5(f)(3), because Defendant's principal office is in the District of Columbia, and because its relevant promotional and EEO records are maintained here.

### III.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.      Orr filed complaints of discrimination and retaliation with the Department of Justice.  Orr files the instant lawsuit more than 180 days after he filed his formal complaint. Therefore, Orr is now free to exercise his private right of action in the U.S. District Court and to obtain a trial **de novo**.

### FACTS

4.In 1998, Orr applied and was selected for the position of Assistant Chief, Deputy U.S. Marshal, GS-14, for the San Juan, Puerto Rico District.  Orr entered on duty on January 1, 1999.

5.      At first in San Juan, Orr's first-level supervisor was Esteban Soto ("Soto"), Chief Deputy U.S. Marshal, GS-1811-15.  Orr's second-level supervisor was U.S. Marshal Herman Wirshing ("Wirshing").

6.      It is undisputed that Orr performed well in his position as Assistant Chief and had the respect of the people who worked for him.

7.      On July 21, 1999, Wirshing had a conversation with Orr in which he told Orr that "chiefs come and go here, they never stay more than two years… it will always be like that until we get one of our own in here and not one from the outside."

8.      Orr perceived the comment as threatening and challenging toward him and his career.

9.      Some time prior to September 4, 1999, Assistant Chief Esteban Soto announced that he would be leaving the district.

10.    On September 4, 1999, Orr wrote to Wirshing indicating to him that he was interested in returning to Michigan, but also very interested in the possibility of becoming the Chief in Puerto Rico, and being part of the DPR "family."

11.    Orr also expressed interest in discussing the situation with Wirshing.

12.    It is undisputed that Wirshing did not reply to Orr's letter in any fashion. Exh. 1 at 77.[1]

13.    It is undisputed that at that time Orr had never given any consideration to attempting to be posted in the United States Virgin Islands ("U.S.V.I."). Exh 1. at 77-78.

14.    Orr was subsequently called by Wirshing's Assistant Chief, Soto, who said that a supervisor who had been Acting Chief in the U.S.V.I. had passed away.

15.    Soto asked if Orr would be interested in getting some acting chief time in the United States Virgin Islands. Exh. 1 at 78.

16.    Soto's supervisor was Marshal Wirshing. Accordingly, when Chief Soto asked Orr if he was interested in this detail, Orr logically inferred that Wirshing wanted Orr to go on the detail. Exh. 1 at 79.

17.    After all, Soto's job as Chief Deputy USM was to follow Wirshing's orders. Exh. 1 at 79.

18.    Ultimately, Orr took the detail in the Virgin Islands. Exh. 1 at 80.

19.    It is undisputed that Wirshing never objected to Orr regarding Orr's going to the Virgin Islands; rather, he approved it. Exh. 1 at 81.

20.    On September 23, 1999, an SF-52 was signed detailing Orr to the U.S.V.I. as Acting Chief Deputy U.S. Marshal.

21.     That same day, still not having heard from Wirshing about the vacancy for the position of Chief Deputy U.S. Marshal in *Puerto Rico*, Orr graciously wrote a thank you note to Wirshing, expressing gratitude for Wirshing's agreement to Orr's detail opportunity.

22.     The very next day after Orr's thank you note, Wirshing finally sent out a Request for Personnel Action seeking a GS-15 Chief to fill Soto's position that he had known was about to become vacant.  Exh. 2[2] (ROI 24(d)).

23.     Wirshing waited for Orr to accept the detail to the USVI before posting the announcement.

**24.**     Months later, Orr confided to Robert Sanchez that he had come to understand that he had been "set up" (to lose out on the Puerto Rico Chief's job) by Wirshing.

### Donato Is Appointed As Acting Chief; Orr Goes on Detail to the U.S.V.I.

25.     On September 28, 1999, Wirshing temporarily promoted Juan Donato for up to 120 days to fill Orr's position, Assistant Chief Deputy.  Exh. 2 (ROI 25(b)).

26.     On October 1, 1999, Orr was officially detailed to the U.S.V.I.

27.     That same day, Wirshing appointed Juan Donato-Morales ("Donato"), who is Puerto Rican, to ***Assistant Chief*** in a temporary promotion for up to 120 days.  Exh. 2 (ROI 25a).

### Permanent Puerto Rico Chief Position is Posted; Orr Applies

28.     On October 18, 1999, a vacancy for permanent Chief Deputy U.S. Marshall for Puerto Rico, #99-078, was posted.  Exh. 2 (ROI 24(a)).

---

[1]     Exhibit 1 hereto consists of transcript excerpfrom the administrative hearing.
[2]     Exhibit 2 consists of excerpts from Defendant's report of investigation in this case.

4

29.     Orr applied for the position.

30.     Wirshing was the recommending official.

31.     Louis McKinney ("McKinney") was assisting Director Marshall, who

would have been the selecting official.  Applications were set to close in November 1999.

### Wirshing Falsely Claims Orr Did Not Become Acting Chief Because He Accepted a Detail to the U.S.V.I.

32.     Wirshing has attempted, disingenuously, to create the misimpression that

Orr lost out on the Puerto Rico Chief's post because he "unilaterally" decided to accept a

detail to the Virgin Islands that was against Wirshing's wishes.  Thus, in his Affidavit

(Exh. 2 (ROI 17)), Wirshing lied as follows:

> . . . My preference was to detail Juan Donato to the Virgin Islands
> because I needed Assistant Chief Michael Orr  in the San Juan,
> Puerto Rico district.  Since Assistant Chief Michael Orr was gone
> in October 1999 by the time that Chief Esteban Soto was no longer
> here, I temporarily promoted Supervisory , Deputy US Marshal
> Juan Donato to the position of Acting Chief, Deputy US Marshal. .

Exh. 2 ROI 7 (Wirshing Aff.) at 3.

33.     In fact, there is no credible evidence that Wirshing ever suggested to

Donato, Orr or Marshal Hoover of the USVI, that Donato go to the Virgin Islands instead

of Orr.

34.     There is no evidence that Wirshing temporarily promoted Donato

"[s]ince. . .Orr was gone by the time. . .  [and] Soto was no longer here."

35.     In fact, it is undisputed that Wirshing knew Soto had accepted another

position and therefore would no longer be around, well *before* Orr was offered or

accepted the Virgin Islands detail, and that Orr had directly expressed his interest in

succeeding Soto before Orr was offered and then accepted that detail to the Virgin

Islands. Exh. 3 hereto (Orr's Sept. 14, 1999 memo to Wirshing re Soto's imminent departure and Orr's detail to the Virgin Islands, which occurred September 27, 1999).

36.     On November 29, 1999, a rating sheet was faxed to the Puerto Rico District Office showing Orr and Armstrong as the sole candidates for the permanent chief's position in Puerto Rico.

37.     Wirshing knew that Armstrong was scheduled to retire soon, and believed that it would take many months to get a new Chief on board.  Exh. 1 at 535-36.

38.     Wirshing did not immediately cancel the vacancy announcement.

39.     On December 10, 1999, having seen that Donato had become the Chief in Puerto Rico and in deference to his family concerns, Orr wrote to Director Marshall requesting transfer to Detroit.

40.     The correspondence did not disavow interest in the Puerto Rico Chief's position. Orr's correspondence was passed on to Wirshing.

### Juan Donato is Appointed Acting Chief in Puerto Rico

41.     On December 13, 1999, Wirshing signed a memo that was disseminated to "all employees," which stated that, "effective immediately," Juan Donato was the "*Acting Chief*" (not Assistant Chief).  Exhibit 4 hereto (Agency Exh. 9).

42.     On December 14, 1999, Wirshing signed an SF-52 form requesting that Donato be noncompetitively promoted to Acting Chief for a period not to exceed 1 year. Exh. 2 (ROI 25c).

43.     However, the request asked for something impossible because the Chief's job represented a two-grade promotion for Donato.

### Marshal Wirshing Requests That Headquarters Permanently Reassign Orr Out of Puerto Rico, Then, Under Oath, Falsely Denies Having Done So

44.     On December 17, 1999, Wirshing wrote to Director Marshall complaining that Orr lacked courtesy.

45.     Wirshing "strongly recommended" Orr's transfer out of Puerto Rico to the Virgin Islands or Detroit. Exh. 5 hereto (Defendant's Hearing Exh. 10).

46.     However, at the EEOC administrative hearing, Wirshing was impeached when he testified that it was "impossible" that he wrote a memo stating he didn't want Orr back in the district. Exh. 1 at 521, 526-27.

### Orr Reasserts His Interest in the Puerto Rico Chief's Job in January 2000; Wirshing Again Refuses to Apply

47.     It is undisputed that on January 8, 2000, Orr sent a letter to Wirshing reiterating his desire to be interviewed for the permanent Chief's position in February, but stating that if he could get a position in Detroit he would take it for family reasons. Exhibit 6 (Defendant's Hearing Exh. 12).

48.     It is also undisputed that Wirshing never replied.

49.     Indeed, Wirshing never communicated with Orr at all during the entire time Orr was in the Virgin Islands.  Exh. 1 at 537.

50.     In late January or the first few days of February, Hoover told Orr to "keep his hat in the ring" for the Puerto Rico position, strongly indicating that Orr would not be getting the permanent position in the U.S.V.I.

### Orr's Interview Is Canceled, Then the Vacancy, Is Canceled; Wirshing Lies About the Circumstances

51.     Once applications closed under the first vacancy announcement, there were two names on the certificate list, and a recommendation and selection could have been made from that list.

52.    It is undisputed that the two qualified candidates were Orr and Steve Armstrong.

53.    Armstrong's mandatory retirement date was less than two years away, and Wirshing did not wish to recommend him.

54.    On February 9, 2000, Orr received an e-mail from Sandra Lyles ("Lyles") of Human Resources, informing him that he should prepare for interviewing for the GS-15 Puerto Rico chief's position on February 24-25, 2000, in New Orleans, Louisiana.  Exh. 7 (Plaintiff's Hearing Exh. 1).

55.    However, on February 16, Orr was informed that his travel was cancelled. Exh. 8 (Plaintiff's Hearing Exh. 2).

56.    Wirshing lied under oath again, when he swore that he had no role to play in the cancellation of the travel.  Exh. 1 at 548.

57.    That was absolutely false.

58.    Jose Garcia, Wirshing's loyal personal secretary, testified that Wirshing told him to indicate on the papers that the travel was canceled because there were "no funds available."  Exh. 1 at 730-32.

59.    Wirshing admits that it would be impossible for Orr to obtain the Chief's position without being interviewed.  Exh. 1 at 566-67.

60.    On February 17, 2000, Orr spoke to McKinney when both were in St. Thomas.

61.    Orr inquired about the Puerto Rico position, and McKinney told Orr that the Director was a fair man and would select the best qualified.    Exh. 1 at 94-96.

62.    However, later that same day, Orr spoke to McKinney on the phone, and McKinney confirmed that instead the position had been cancelled.  Exh. 1 at 95.

63.     In fact, Wirshing had requested cancellation of the position, and McKinney, Wirshing's personal friend, permitted the cancellation. Exh. 9 (Deposition of Katherine Mohan) at 30-34.

64.     An organizational chart dated to the very same day-- February 17-- shows that the District of Puerto Rico already considered Juan Donato the Chief Deputy and Orr his assistant, at the time of the cancellation. Exh. 2 (ROI Exh. 5(b)).

65.     Wirshing had pulled out all the stops to get the vacancy cancelled.

66.     He called Mohan and asked Mohan if he could cancel it.  Exh. 9 (Mohan Dep.) at 20.

67.     Mohan told Wirshing she would have to ask the Director.

68.     McKinney told Mohan that Wirshing had already contacted him directly asking to cancel the announcement.  Exh. 9 (Mohan Dep.) at 18-20.

69.     McKinney decided to concur with Wirshing's request and cancel the announcement.  Mohan Dep. at 30-34.

70.     However, Wirshing falsely testified first that he did not know why the vacancy was cancelled, and then that he *did* know and that it was for the reason of insufficient candidates.  Exh. 1 (Tr. 552-53).

71.     Wirshing was then impeached for saying at his deposition that he had no idea why the vacancy was canceled.  Exh. 1 at 553.

72.     Wirshing claimed that Human Resources might have canceled the vacancy without his involvement.  Exh. 1 at 557-58.

73.     Wirshing testified that he didn't recall if anyone ever told him the reason for the cancellation. Exh. 1 at 558.

74.    He admitted at the administrative hearing that he might have discussed the cancellation prospectively, and was impeached yet again for having insisted at his deposition that he did not.  Exh. 1 at 553-56.

75.    Ultimately, Wirshing admitted at the hearing that he had no idea whether the position was or was not canceled for lack of candidates.  Exh. 1 at 556-57.

76.    He also admitted that if lack of candidates motivated the cancellation, he had no idea why anyone thought there were not enough candidates.  Exh. 1 at 557.

77.    Tyson did not give Orr any rationale for the cancellation of the position. Exh. 2 (ROI 6 (Orr Aff.)) ¶ 1.

78.    Subsequently, on February 23, 2000, Orr had a conversation with McKinney, but McKinney also failed to give Orr any reasons for the cancellation of the vacancy announcement.  Exh. 2 (ROI 6 (Orr Aff.) ¶ 1).

### Orr Files a Grievance/ EEO Complaint

79.    On March 2, 2000, Orr filed a grievance, which was later referred to the Agency's EEO office for counseling. Exh. 2 (EEO Counseling Report, ROI Exh. 4).

80.    Wirshing was informed about the allegations shortly thereafter.  Exh. 2 (ROI Exh. 4 (EEO Counselor's Report)).

### The Agency Attempts To Place Donato As Temporary Chief, For A Period Not To Exceed One Year

81.    On March 3, 2000, a vacancy announcement for a *temporary* Chief Deputy US Marshall, not to exceed one year, was circulated to "District of Puerto Rico Employees".  Exh. 10 (Plaintiff's Hearing Exh. 18).

82.    Orr was in the Virgin Islands, and therefore did not receive the notice and did not initially apply.

## Orr Turns Down Position In The U.S.V.I.

83.    Orr was offered the position in the U.S.V.I., but ultimately decided not to accept it.

## Wirshing And Donato Conduct A Task Force Meeting In Which It Is Undisputed That They Expressed Their Intention To Discriminate Against Non-Puerto Ricans; Wirshing is Impeached

84.    It is undisputed that at a meeting was conducted—largely in Spanish-- at the Miramar office of the Fugitive Task Force on March 9, 2000, less than three weeks after the cancellation of the first permanent Chief Deputy announcement.  Exh. 1 at 891-92.

85.    Orr was in the USVI at the time, but was to return shortly.  Marshal Wirshing did most of the talking at the meeting, but Acting Chief Donato, who stood side by side with him, also spoke.

86.    Two witnesses testified live at the hearing as to what was said.

87.    Andres Jimenez testified credibly, in response to a question by Agency Counsel Joe Lazar, that Wirshing said that he was going to work the system to ensure that non-Puerto Ricans were going to be kept out of supervisory positions. Exh. 1 at 825.

88.    Jimenez' testimony was consistent with his statement on the subject in his Affidavit, ROI 18 (Exhibit 2 hereto).

89.    Andres Jimenez also recalled that Donato was standing next to Wirshing throughout the meeting, and that his impression was that Donato was the focus of the meeting.  Exh. 1 at 857-858.

90.    Andres Jimenez recalled that Wirshing stated—in a reprise of his July 1999 comment to Orr-- that: [non-Puerto Ricans] come to Puerto Rico and "the first thing

they want to do is leave, and that they were tired of that." Wirshing emphasized that management was going to "try to keep those positions open for Puerto Ricans." Exh. 1 at 786.

91.     Wirshing admits that Andres' Jimenez' reputation for truth telling is good. Exh. 1 at 590.

92.     Roberto Sanchez testified similarly to Andres Jimenez, stating that after Donato commented that with regard to a supervisory opening, management was going to "take care of our own people," Marshal Wirshing jumped in and said, in Spanish, that "what Donato is trying to say is that we are sick and tired of gringos coming down here and being promoted and then leaving." Wirshing further added that the gringos were "secando pecho", which Sanchez says translates to having "their chest puffed out as if they had done something great here." Exh. 1 at 891. Sanchez interpreted the statements by Wirshing and Donato as directed against Orr, because they occurred right around the time that the permanent GS-15 vacancy announcement was cancelled. Exh. 2 (ROI 20 (Sanchez Aff.) ¶ 3).

93.     Chief Donato did not testify at the hearing, as he had already been terminated by the Agency for misconduct by that time.

94.     The only witness presented by the Agency with regard to the events of the March 10 meeting was Marshal Wirshing. However, Wirshing left the damaging testimony effectively unrebutted.

95.     Wirshing would not deny that Donato had said: "what we're trying to do is get around the merit promotion system so that we can promote our own people" Tr. 572-73. Nor would Wirshing deny that he himself said: "*what he's trying to say is we're*

*tired of gringos coming in here and getting promoted and leaving with their inflated egos.*" Exh. 1 at 574 –75, 892.

96.     Also, although Wirshing attempted to deny having previously said it prior to the hearing, he was impeached with his deposition testimony, in which he admitted that he might have said that it would be preferable to have someone from Puerto Rico as Chief. Exh. 1 at 575 –76.

### Wirshing Fancies Himself As "Like God" Within The District

97.     Sanchez is absolutely certain that he heard Wirshing say "I am like God here in Puerto Rico." Exh. 1 at 901.  Orr has heard Wirshing say "down here I am God." Exh. 1 at 172.

### Orr Initiates An EEO Complaint And Wirshing Is Informed; Wirshing Reacts Bitterly By Calling Orr a "Fucker"

98.     The events of the March task force meeting were reported to Orr, who contacted the EEO counselor to allege national origin discrimination.

99.     Shortly thereafter, the counselor informed Wirshing of the allegations, without mentioning Orr's name.  Exh. 2 (EEO Counseling Report (ROI Exh. 4)).

100.     Wirshing told the counselor, Ms. McDonald, that he knew about Orr's complaint before the counselor ever spoke to him about it. Exh. 2 (ROI 4 at 6 (EEO Counselor's Report)).

101.     Wirshing admits the truth of what is contained in the Counselor's Report. Exh. 1 at 514.

102.      However, testifying falsely once again, Wirshing contradictorily asserts that he didn't learn about Orr's EEO complaint until "much later" than March 17 or 20. Exh. 1 at 499.

103.    In fact, he most certainly did.

104.    Thus, on March 20, Wirshing told Javier Jimenez that Orr was a "fucker" who had filed an EEO complaint against him.  Exh. 1 at 505.

105.    Wirshing falsely denies the comment.  Exh. 1 at 506.

### The Agency Changes Temporary Chief Vacancy Announcement To Assistant Chief To Preclude Orr From Applying, Then Selects Donato For The Assistant Chief Even Though It Was Already Treating Donato As Chief

106.    On March 17, 2000, Orr, who was still in the U.S.V.I., contacted Human Resources in Washington about the temporary Chief's job that had been posted in Puerto Rico only around March 3. Exh. 11 (Plaintiff's Hearing Exh. 18).

107.    Orr said that if it was really a Chief's position, GM-15, of course he wanted to apply. Exh. 1 at 114-115.

108.    Mohan informed Orr that she would look into it and get back to him.  Tr. 114.  Mohan contacted Wirshing and asked if he was seeking to select a Chief—as the announcement indicated—or an Assistant Chief.  Exh. 1 at 495-96.

109.    Mohan later called Orr back, she said that the announcement was in error.  The position was not really for a temporary Chief, GS-15, as the announcement had indicated, but rather for *Assistant* Chief, GS-14.  Exh. 1 at 114-115. Exh. 2 (ROI 6 (Orr Aff.) ¶ 2; Mohan Dep. at 75-76).

110.    Mohan confirmed to Orr that the district would now have two Assistant Chief Deputy United States Marshals (Orr and the new selectee), but no Chief.  Exh. 1 at 115.

111.    At that point Orr told Mohan he didn't really want to apply since he already was a GS-14 Assistant Chief. Exh. 2 (ROI 6 (Orr Aff.) ¶ 2).

112.    At the time, Juan Donato-- who subsequently was selected for the "temporary" position-- was a GS-13, and therefore ineligible for a promotion to GS-15. Exh. 1 at 116-117.

113.    Orr was the only potential candidate available who would have been qualified at the GS-15 level.  Id.

114.    Wirshing testified that if he had known Orr was coming back, he wouldn't have selected Donato for the temporary one-year promotion.   Exh. 1 at 498-99.

115.    The next day, March 18, 2000, Orr sent an e-mail to Mohan, which states: "I did not put in for the Assistant Chief job, #00 1. As you told me it was an erroneous change on the announcement to CDUSM, there will now be two ACDUSM's." Exh. 12 (Plaintiff's Hearing Exh. 9).

116.    In fact, by this time, Juan Donato (a) was already listed as chief in the February Organizational Chart; (b) had moved into Soto's former office; and (3) thought he was the Acting Chief.  Exh. 2 (ROI 8).

**Orr Files Formal EEO Complaint; Wirshing Retaliates Against Orr, And Even Against Javier Jimenez Because of His Pique Against Orr**

117.    On March 19, 2000, Orr formally filed his EEO complaint by email (updated summary notes).

118.    On or around March 2000, Wirshing "cussed out" Orr to Javier Jimenez, telling Javier Jimenez that Orr was a "fucker" who had filed complaint against him. Exh. 1 at 323; Exh. 2 (ROI 21 at 2).

119.    Wirshing brought up Orr even though Orr had nothing to do with the subject Jimenez had brought to his attention.  Exh. 1 at 323-24.

120. Apparently associating the non-Puerto Rican Javier Jimenez with Orr in his mind, Wirshing reversed his earlier offer to allow Jimenez to he transferred out of Puerto Rico (though he later did allow it). Exh. 1 at 323.

121. On March 20, 2000, fully a week before Orr returned from the U.S.V.I., Wirshing wrote a memorandum for Orr instructing him that, upon his return, instead of supervising the task force, he was to supervise the movement of prisoners. Exh. 1 at 131-32.

**Wirshing Selects Donato For One-Year Promotion On Same Day As He Re-Posts The Permanent Position-- The Business Day Immediately Before The Date Of Orr's Return To Puerto Rico (3/24/00); Orr Applies Again Under The Second Permanent Vacancy Announcement**

122. On March 24, 2000, Juan Donato was officially selected for the one year appointment as GS-14 Assistant Chief Deputy. Exh. 2 (ROI 25(d)).

123. That same day, a new announcement was posted for the permanent chief's position, GS-15, #00-029. Exh. 2 (ROI 26(a)) The closing date was supposed to be May 2, 2000.

**Retaliatory Harassment Against Orr Is Ratcheted Up Upon Orr's Return to Puerto Rico; Wirshing is Impeached Upon Denying It**

124. On March 27, 2000, Orr returned to work at Puerto Rico from the Virgin Islands detail.

125. However, even before Orr returned, Wirshing and Donato approached Deputies Robert Vizcarrando and Andres Jimenez. They said they wanted to give Orr the worst car in the fleet and to "joderlo"-- screw him up. Exh. 1 at 126-27.

126. Wirshing would not deny the comment at his deposition, and accordingly was impeached when he did so at the hearing. Exh. 1 at 582.

127.    When he returned from the U.S.V.I, Orr was in fact issued a lousy, unsafe car.  Exh. 1 at 140-42.

128.    When Orr returned to Puerto Rico on March 27, 2000, he was reassigned out of the task force of which he was the leader, and assigned to the daily movement of prisoners.  Exh. 1 at 131-32.

129.    Although the Agency attempted to minimize the significance of this reassignment at the hearing, Wirshing admits that at the time he did not inform Orr that the assignment was temporary.  Exh. 1 at 532-33.

130.    Orr was assigned to supervise three employees rather than the whole task force, which was his agreed-upon responsibility when he first took the position in the Puerto Rico district.  U.S. Marshal Wirshing's Memorandum, dated March 20, 2000 Exh. 12 (Plaintiff's Hearing Exh. 21).

131.    Thus, Orr was to be supervised by a lower-graded employee-- Donato. Exh. 1 at 142-43, 533.

132.    Indeed, Donato presented Orr with his performance standards, which Orr signed as Donato's subordinate.  Exh. 1 at 143.

133.    No one of Orr's rank and grade had previously been assigned to prisoner movement in this fashion, nor was anyone so assigned after Orr.

134.    Donato heard that Orr had filed a complaint with the EEO and ordered him not to talk to anybody except EEO and his attorney regarding the issue. Exh. 1 at 143-153.

135.    It is undisputed that some time after the March 10 task force meeting, Juan Donato threatened Andres Jimenez not to support Orr.  Thus, Donato called Andres Jimenez to his office and asked a hypothetical:

17

136.      there is  two gangs and the leader of one gang what he wants to do is leave and take his people with him.  What do you think is going to happen to the people who help him when they stay behind because the leader of the opposing game is still going to be there?

137.      Andres Jimenez understood the hypothetical as follows:

> I took that to mean that even whether I liked it or not, I  was involved because I knew I was going  to be interviewed.  And Donato was kind of telling me that if you help them and  you're not involved, you are still going  to be here when they leave.  And that was the scenario he gave me. So what do you think these other gangs are going to do to you?

Exh. 1 at 763-64.

138.      On April 6, 2000, Wirshing told Orr he knew about Orr's EEO complaint.

139.      On April 19, 2000, Orr wrote to the EEO counselor that he felt he was being retaliated against.  Exh. 1 at 151-52.

140.      However, the Marshal Service never investigated that complaint.  Exh. 1 at 154.

## 2nd Vacancy Announcement Closes, But No Selection Is Made

141.      On March 24, 2000, a new announcement was posted for the permanent chief's position, GS-15.

142.      This, despite the fact that Mohan had told Orr just a couple of weeks before that henceforth there would be just two assistants and no chief.

143.      The same candidates emerged as on the first occasion, Orr and Armstrong.

144.      By now, Armstrong was even closer to retirement.

145.      The closing date was scheduled for May 2, 2000.

146.      In June, Orr was interviewed in St. Louis.

147.    However, the Agency took no action whatsoever on filling the position over the next nine months.

**Harassment And Retaliation Against Orr And Those Who Supported Him, Continues;
Wirshing Falsely Denies That the Word "Gringo" Is In His Vocabulary**

148.    Donato had a regular routine of calling non-Puerto Rican employees "gringos", and "fucking gringos".  Exh. 1 at 753, 761-63.

149.    He called Orr that to Deputy Chris Barfield, from whom Orr heard about it.

150.    Andres Jimenez testified that he found this offensive.  Exh. 1 at 813.

151.    Donato also called deputies "gringo maricon [faggot]".  Exh. 1 at 753; Exh. 12 (ROI 21 (Affidavit of Javier Jimenez) ¶ 4; ROI 18  (Affidavit of Andres Jimenez) ¶ 3).

152.    Orr was aware of this. Exh. 1 at 168-69.

153.    Andres Jimenez interpreted Donato's words in a derogatory way.  Exh. 1 at 753.

154.    Wirshing heard Donato call others "gringo", but he thinks it is not a derogatory word.  Exh. 1 at 573-74.

155.    He does not deny that Donato called others "maricon".  Exh. 1 at 582.

156.    Deputy Barfield attempted to correct Donato in his use of epithets, in the presence of Andres Jimenez.

157.    However, Donato was unmoved.

158.    Jimenez testified that upon being asked to cease, Donato said something to the effect of: "if you don't like it, you can freaking leave" and  "I don't really care if you like it or not." Exh. 1 at 755-756.

159.    Donato certainly never apologized. Exh. 1 at 756.

160.    Despite being obviously intimidated by Wirshing, his administrative assistant Jose Garcia also admitted that Wirshing called employees "gringo".  Exh. 1 at 734-36.

161.    Garcia testified, tellingly, that he did not "dare" to admit that Wirshing had used that word to Orr.  Exh. 1 at 734-36.

162.    Garcia attempted to change his deposition testimony that Wirshing had called Orr  "whacko" in Garcia's presence, to a version wherein he, Garcia, used the word instead of Wirshing.

163.    Accordingly, Garcia was impeached for making such a material change. Exh. 1 at 737-38.

164.    Robert Sanchez is "one hundred percent certain" he's heard Wirshing use the word "gringo".  Exh. 1 at 901.

165.    However, Wirshing falsely insists the word is not in his "dictionary". Exh. 1 at 506-07.

166.    Javier Jimenez testified that he and others were called "Gringo" by Donato and considered it a racial slur.  Exh. 1 at 336-37.

167.    Javier Jimenez asked Donato to cease but doesn't recall that he did.  Exh. 1 at 336-37.

168.    Donato also called Javier Jimenez "maricon"; Javier Jimenez also asked him to stop that.  Exh. 1 at  339-40.

## Jose Concepcion Is Removed From The Task Force For Being
## Perceived As Supportive Of Orr

169.    Jose Concepcion is a Puerto Rico Police officer who was under Orr's command as part of the task force.  Exh. 1 at 756.

170.    Concepcion and Orr would jog together. Exh. 1 at 757.

171.    Concepcion received numerous threats from Donato.  Exh. 1 at 759.

172.    For example, Donato told Concepcion to stop running with Orr.  Exh. 1 at 758.

173.    He also asked Concepcion if Concepcion was an insect (snitch).  Exh. 1 at 759-60.

174.    Donato made it clear to Andres Jimenez (who lived in the same building as Concepcion) that Concepcion was in trouble.  Exh. 1 at  842-43.

175.    Donato told Andres Jimenez that Mr. Concepcion was going to be off of the fugitive task force because he was on the wrong team (Orr's team).

176.    Concepcion was later terminated from the task force, in November 2000. Exh. 1 at 162-164, 595.

177.    Concepcion told his housemate and work partner Andres Jimenez, that he had lost his position due to his relationship with Mick Orr. Exh. 1 at  759.

178.    Orr apologized to Concepcion because he "knew that his association with me that had [caused] him to be removed from the task force.  And in Puerto Rico it was a big deal because it was like $6,000.00." Exh. 1 at 164.

## Raquel Bermudez Is Removed From The Task Force

179.    Raquel Bermudez was another task force member who was not employed directly by the USMS and was friendly with Orr.

180.    Wirshing believes that Bermudez is part of a conspiracy that is plotting to do him "harm".

181.    Bermudez was told that she would not be hired for a position because of her association with Orr. Exh. 1 at 158-160.

182.    She told Orr that.

**183.**    Bermudez was later removed from the task force without cause.

<u>Orr Leaves The District;</u>
**<u>The Second Vacancy Announcement Is Canceled By Wirshing</u>**

184.    Orr left Puerto Rico for a position in Wisconsin on January 26, 2001.

185.    Two and-a-half weeks later, o February 13, 2001, the GS-15 position in Puerto Rico was finally formally canceled.  Exhibit 12 (Defendant's Hearing Exhibit 18); Exh. 9 (Mohan Dep. at 73-74).

186.    Two days after that, on February 15, 2001, the position was opened for a third time.  Agency Exhibit 19.

187.    Orr did not apply for the position on this third occasion, others did, and a new Chief Deputy U.S. Marshal finally entered on duty in 2002. Exh. 9 (Mohan Dep. at 74).

188.    It is undisputed that Wirshing sought the cancellation of the second announcement, though he claims disingenuously that he cannot remember whether or not he did.  Exh. 1 at 570.

189.    Mohan and Wirshing at some point had a conversation in which Wirshing discussed Orr and stated that he wanted to cancel the position.  Exh. 9 (Mohan Dep. at 72-73).

**190.**    The Career Board played no role in either vacancy announcement situation because the positions were canceled before career board review would have occurred.  Exh. 9 (Mohan Dep. at 88).

### Wirshing's Favoritism Toward Donato Is Shown

191.    In 2002, Wirshing wrote an unusual memo to Katherine Mohan insisting on the promotion of Donato.   Exhibit 12 (Plaintiff's Hearing Exh. 26).

192.    Clearly signaling his overarching commitment to the advancement of Donato's career, Wirshing stated emphatically that he would not look kindly upon another candidate's being selected for a permanent position in lieu of Donato.

### Orr Suffers From Severe Retaliatory Harassment

193.    In March 2000, Orr was informed that Wirshing told Terry Walter, Orr's mentor from the USMS in Iowa, that that "fucker" Orr was coming back to Puerto Rico. Exh. 1 at 127.

194.    Orr also knew around that time that Wirshing had called him a "fucker" to Javier Jimenez.

195.    Orr learned that Donato and Wirshing were openly expressing their desire to work around the merit system and promote Puerto Rican employees because they were sick of people coming in from the Continental United States to fill the positions.

196.    Orr heard about the task force meeting from Bobby Sanchez, Andres Jimenez, Chris Barfield and  Javier Jimenez. Exh. 1 at 271.  When Orr learned about the meeting just before his return from the U.S.V.I., it made him feel  "totally abandoned" and embarrassed "sitting there in charge of essentially nothing and felt belittled."  Exh. 1 at 137-139.

197.    Orr was "crushed" when he reported back to Puerto Rico and was excluded from the task force. Exh. 1 at 135.  He was "embarrassed and felt kind of powerless and just crushed, stunned. . ."  It amazed him that he had gone from working with some of the finest officers to prisoner movement.  Id.  As a result, Orr, a life-long law enforcement officer, left the building and cried.

198.    Once back in the district, Orr often heard of people insulting him in the office, and heard that Donato would ask employees what "team" they were on.  Exh. 1 at 166.

199.    Orr frequently heard that people would call him a "gringo" behind his back, and Chris Barfield let Orr know that he had overheard Donato call Orr a "fucking gringo." Exh. 1 at 168.

200.    Many of the employees told Orr that they did not want to be associated with him because they knew that association with him would result in negative consequences to their job. Exh. 1 at 175-176.

201.    Their wisdom was confirmed.  Thus, Donato threatened Andres Jimenez with removal from the task force several times.

202.    Raquel Bermudez was denied a job, and Jose Concepcion was fired from the task force for his association with Orr. Exh. 1 at 157-158.

203.    The accumulation of the Defendant's actions against Orr and his colleagues severely interfered with Orr's ability to perform his duties in Puerto Rico.

204.    Orr testified that these events caused him emotional harm and embarrassment. Orr felt "powerless, useless and guilty." Exh. 1 at 159.  He also testified that he apologized to Bermudez and Concepcion.  Exh. 1 at 160-161.

205.    Andres Jimenez confirmed that all the individuals associated with Orr were removed from task force.  Exh. 1 at 784.

206.    He spoke with Orr about Concepcion being removed.  He observed that Orr was upset and felt bad.

207.    Bermudez told Orr that she would not be hired for a position because of her association with him. Exh. 1 at 158-160.  Orr felt "guilty" because Bermudez was  "an upright person" and she missed out on a "different life, the job that would have been better for her family and for her," on account of her association with him.   Exh. 1 at 159-60.

208.    Andres Jimenez later informed Orr about Raquel Bermudez' firing over the phone and Orr was upset.  Exh. 1 at 802.

209.    Orr found it very harmful to him when those who were involved with him were having adverse things happen because of their association or perceived association with him.  In many cases "they were good professional people who were doing the right thing and doing their job.  And they were associated with me because I was their supervisor."

210.    When Andres Jimenez complained to Donato about the hostile environment in the district, instead of taking action to correct it, Donato bizarrely claimed there was a conspiracy against Wirshing.

211.    On the occasion when Andres Jimenez told Wirshing that there was no conspiracy, the Marshal just said: "Good.  Stay out of it."

212.    However, Wirshing did not say he would look into the situation that Jimenez was describing.  Exh. 1 at  843-44.

213.    Sanchez recognized that it was humiliating to Orr to be subordinated to Donato.  Exh. 1 at 910-11.

214.    He saw that Orr felt badly; that he didn't know what he was going to do. Sanchez saw that Orr felt humiliated for being bypassed by lower-graded supervisor. Exh. 1 at 899.

215.    Orr told Sanchez that he was considering trying to transfer to Michigan because he was in a "hostile unpleasant environment."  Exh. 1 at 923.

216.    Feeling "powerless, embarrassed, denuded, left in an unjust situation and abandoned by the Department of Justice," Exh. 1 at 173, Orr got counseling from the Employee Assistance Program to deal with the stress and to improve his mental health. Exh. 1 at 172-73.

217.    When Orr got a call from Joe Trendel, the chief in Milwaukee, Orr admitted that he was not well.  Trendell offered Orr a GS-13 job (which was a demotion).

218.     Trendell told Orr that it was clear that Orr needed to "get the heck out of Puerto Rico." Orr related some of the retaliatory acts that had been committed against him, and some of his feelings of helplessness and stress.  Orr then "broke down and cried on the phone." Exh. 1 at 180-81.

219.    Orr was not a person who normally would have cried frequently. Orr said that what happened to him in the Puerto Rico District prompts him to cry more than he did in the past.

## STATEMENT OF CLAIMS

**Count I:**        **Failure to Select Orr In Violation of Title VII and 29 C.F.R. 1614, on Account of His Race and National Origin**

220.     Plaintiffs incorporate paragraphs 1-219 by reference.

221.     As summarized above, Defendant refused to select Plaintiff Orr promotion to the position of Chief Deputy United States Marshal in the District of Puerto Rico, despite his having twice applied, and although he was sufficiently qualified and the best qualified applicant for the position.  Defendant took this action against Orr on account of his being non-Puerto Rican.

222.     As a result of the discrimination imposed upon him, Orr has suffered considerable injury, both financially and emotionally.

### Count II:     Retaliatory Failure to Promote Orr
### In Violation of Title VII and 29 C.F.R. 1614

223.     Plaintiffs incorporate paragraphs 1-22 by reference.

224.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. prohibits employers from discriminating against any of his employees or applicants for employment...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this sub-chapter.

225.     As summarized above, Defendant retaliated against Orr by rejecting his applications for employment despite his being the best-qualified candidate, on account of his protected activities.

226.     As a result of the retaliation imposed upon him, Orr has suffered considerable injury, both financially and emotionally.

### Count III:     Retaliatory Harassment for Activities Protected by Title VII

227.     Plaintiff incorporates paragraphs 1-226 by reference.

228.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. makes it unlawful for an employer to discriminate against any individual due to opposition to unlawful discrimination and/or participation in EEO activities.

229.    An employer may be held liable for a hostile environment motivated by retaliatory intent.  Ray v. Henderson, 217 F.3d 1234 (9th Cir. 2000); Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426 (2nd Cir. 1999); Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878 (7th Cir. 1998); and Gunnell v. Utah Valley State College, 152 F.3d 1253 (10th Cir. 1998)).

230.    As shown above, Wirshing and Donato inflicted a hostile work environment on Orr on account of his opposition to their race and national orientation discrimination, and his invocation of EEO procedures.

231.    Orr's attempt to follow the requisite procedures by protesting and participating in the EEO process failed to halt the harassment.

232.    By engaging in a retaliatory hostile work environment against Orr because he invoked EEO procedures, Defendant violated the statute.

233.    Defendant's actions, as described above, caused serious emotional harm to Orr.

**Count IV:     Hostile Environment Based on Race and National Origin**

234.     Plaintiff incorporates paragraphs 1-233 by reference.

235.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. makes it unlawful for an employer to discriminate against any individual on account of race or national origin.

236.     As shown above, Wirshing and Donato inflicted a hostile work environment on Orr on account of his being non-Puerto Rican.

237.     Defendant's actions, as described above, caused serious emotional harm to Orr.

**REQUEST FOR RELIEF**

WHEREFORE, the Plaintiff, Michael Orr, prays that the Court grants him the following relief:

(a)     A declaratory judgment that Defendant's conduct violated his rights;

(b)     Reinstatement of Plaintiff Orr to employment with the Agency with a promotion to the GS-15 level retroactive to the year 2000, with full back pay and benefits.

(c)     Compensatory damages for both aggrieved Plaintiffs, in an amount to be determined by the jury in accordance with the proof at trial, for the financial (including back pay and lost income) and emotional harm caused by Defendant;

(d)     Pre-judgment and post-judgment interest;

(e)     Reasonable attorneys' fees, expenses and costs;

(f)     Posting of notices on Defendants' premises notifying employees that Defendant has violated the anti-discrimination laws, and that employees who report future violations may not be subject to retaliation; and

(g)        Such other relief as the court shall deem just and proper;

**<u>Jury Trial Demand</u>**

The Plaintiffs demand that this case be tried by a jury.

Respectfully submitted,

THE GOLDSMITH LAW FIRM, LLC


_____
Leizer Z. Goldsmith
1900 L Street, N.W., Suite 614
Washington, D.C. 20036
Telephone: (202) 775-0040
Facsimile: (202) 318-0798

Attorney for Plaintiff Michael Orr