UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL W. ORR, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 05-2287 (RJL) |
| | ) |
| ALBERTO GONZALES, | ) |
| United States Department of Justice, | ) |
| | ) |
|     Defendant. | ) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER**

In response to defendant's motion, plaintiff fully concedes that the District of Columbia is an improper venue for the instant lawsuit. Pl.'s Opp. at 1, 5, 9. Nevertheless, plaintiff opposes dismissal of the action and instead, requests transfer of this action to the Eastern District of Virginia pursuant to 28 U.S.C. § 1406(a). Plaintiff's grounds for seeking transfer of this case to the Eastern District of Virginia -- rather than to the District of Puerto Rico where defendant argued venue was most appropriate -- are transparent. On balance, the equities weigh in favor of transferring the case to the District of Puerto Rico, the venue where the material events giving rise to the lawsuit occurred, and where the majority of critical witnesses (including the two principal alleged miscreants) are located. Plaintiff, as a resident of Michigan, has no greater nexus to the Eastern District of Virginia than to the District of Puerto Rico, and he and his counsel previously raised no concerns about litigating the administrative proceedings in this matter in Puerto Rico. Accordingly, as argued in defendant's motion, if this Court decides not to dismiss this action for lack of venue, it should transfer this action to the District of Puerto Rico.

Having made out a defense available under Rule 12(b)(3) of the Federal Rules of Civil Procedure, defendant is entitled to dismissal even though defendant also recognizes that courts ordinarily transfer cases brought in improper venues. Darby v. United States Dep't of Energy, 231 F.Supp.2d 274, 277 (D.D.C. 2002). Importantly, 28 U.S.C. § 1406(a) requires the Court to dismiss the action unless plaintiff can show that it would be in the interests of justice to transfer the case to a proper venue. 28 U.S.C. § 1406(a) (cases filed in improper venues "shall" be dismissed "or if it be in the interest of justice" transferred to a proper venue). Perhaps the best evidence of plaintiff's difficulty satisfying an "interests of justice" standard is his opposition itself.[1] Plaintiff's pleading and opposition to defendant's motion confirm: (1) that plaintiff has been represented by the same counsel throughout (Pl.'s Opp. at 2); (2) that plaintiff's counsel is based in Washington, D.C. (id.); (3) that plaintiff is a high-level employee (Complaint, ¶¶ 4, 20); (4) that he is a long-term employee (Pl.'s Opp. at 1; Complaint, ¶ 1); (5) that plaintiff and his counsel have been in possession of documents for years which reflect that the United States Marshals Service is located in Virginia and has been throughout the events about which plaintiff complains (Pl..'s Opp. Exhibit 6 - Oct. 18, 1999 document re cancellation of vacancy announcement on letterhead from the Acting Director and showing Arlington, VA as the address). Taken together, these facts demonstrate that plaintiff intentionally or recklessly

---

[1] Plaintiff's opposition incorrectly suggests that it is defendant's burden to demonstrate that dismissal serves the interests of justice. See Pl.'s Opp. at 6. The "interests of justice" standard is applicable to defendant's alternative motion to transfer under 28 U.S.C. § 1406(a), a request in which plaintiff now joins. Pl.'s Opp. at 1 ("Orr concedes that venue is not appropriate in the District of Columbia, but requests respectfully that the Court transfer this matter to the Eastern District of Virginia, rather than Puerto Rico."). Thus, it appears that defendant has the burden of showing that transfer to Puerto Rico serves the interests of justice while plaintiff bears the burden of demonstrating that transfer to Virginia is in the interests of justice.

selected an improper venue because it is simply implausible for either plaintiff's counsel or plaintiff himself to assert that they were "mistaken" about something as fundamental as where the USMS is based. See Pl.'s Opp. at 5. Their explanation that some USMS employees refer colloquially to headquarters as Washington is feeble at best, and cannot outweigh plaintiff's counsel's duty to ensure that factual contentions have evidentiary support in a case they readily concede they have been working on since 2001. Cf. Fed. R. Civ. P. 11(b)(3).[2] Far from a mistake, plaintiff's conduct constitutes blatant forum shopping which should not be countenanced by sweeping it under a rug plaintiff would like to label the "interests of justice." To the contrary, the interests of justice are best served by dismissal of the case to discourage other litigants from similar improper litigation tactics. See Professional Managers' Ass'n v. United States, 761 F.2d 740, 744 (D.C. Cir.1985) (discussing Congress' disdain for forum shopping); cf. Fed. R. Civ. P. 1.

If the Court reaches the question of whether to transfer the case to Puerto Rico or Virginia, it should select the former. Although plaintiff's opposition brief correctly identifies the applicable standard for determining which venue is most appropriate, its analysis of the factors is flawed and invites consideration of inapplicable factors such as the location of counsel and the relative costs of transportation. See Pl.'s Opp. at 9. As stated in this Court's opinion in Holland v. A.T. Massey Coal, 360 F. Supp.2d 72 (D.D.C. 2004), "private interest factors" include: (1) plaintiff's choice of forum; (2) defendant's choice of forum; (3) whether the claim arose

---

[2] Plaintiff's characterization of having "failed to choose the most appropriate [venue]" is particularly disingenuous in light of his repeated admissions that the District of Columbia is an improper venue and the fact that he had every reason to know that D.C. was an improper venue when he filed the Complaint. See Pl.'s Opp. at 6.

elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. Id. at 76. "Public interest" factors include: (1) the transferee's familiarity with governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding controversies at home. Id.[3]

Ordinarily, while a plaintiff's choice of forum should be given deference, it is not dispositive, and should be accorded even less deference here because the Eastern District of Virginia represents plaintiff's second choice. Moreover, plaintiff's secondary choice of forum should carry little weight insofar as the Eastern District of Virginia is not plaintiff's "home forum," see Brannen v. National R.R. Passenger Corp., 403 F.Supp.2d 89, 93 (D.D.C. 2005), and the "connection between the controversy, the plaintiff, and the chosen forum is attenuated." Holland, 360 F.Supp.2d at 76.

The key players in this case are not located in Virginia. Plaintiff, a current resident of Michigan, at all times relevant to the allegations contained in the instant lawsuit, was employed by USMS in the District of Puerto Rico. The allegations in his administrative complaint of discrimination focused on two individuals who allegedly harbored a discriminatory animus against him. See Declaration of Joe Lazar ("Lazar Dec."), ¶¶ 3-4 (attached as Exhibit 1). Those two people are Herman Wirshing, the United States Marshal for the District of Puerto Rico, and

---

[3] As to the public interest factors, the federal courts in Virginia and Puerto Rico are equally able to handle employment discrimination cases, but it is likely that the court in Puerto Rico has less calendar congestion. See U.S. District Courts – Civil Cases Commenced, Terminated, and Pending During the 12-Month Period Ending September 30, 2004 and 2005 (available at http://www.uscourts.gov/judbus2005/appendices/c0.pdf; last checked April 7, 2006) (attached as Exhibit 2). The local interest in deciding a case alleging bias in favor of people from Puerto Rico to the detriment of people not from Puerto Rico is far stronger in Puerto Rico than in Virginia.

Juan Donato, the former Chief Deputy U.S. Marshal for the District of Puerto Rico. Id. Wirshing is still employed in Puerto Rico, and Donato has separated from employment, but still may be located in Puerto Rico. Id. ¶ 6.

The key events plaintiff challenges are also not in Virginia. Specifically, plaintiff complains that Wirshing manipulated the USMS merit promotion process to deny plaintiff the opportunity to be selected for the Chief Deputy U.S. Marshal position in the District of Puerto Rico. Complaint, passim & ¶ 65 ("Wirshing pulled out all the stops to get the vacancy cancelled."); see Lazar Dec. ¶ 4. Plaintiff further complained that Wirshing arranged for plaintiff to be detailed from Puerto Rico to the U.S. Virgin Islands in order to place Donato in a better position to be internally promoted in Puerto Rico. Complaint, ¶¶ 23-24. According to plaintiff, once he was detailed to the U.S. Virgin Islands, Wirshing arranged to have Donato temporarily promoted in the office. Id. ¶ 41-43. In addition, plaintiff alleged that Wirshing was instrumental in having the vacancy announcement for the Chief Deputy U.S. Marshal position in Puerto Rico cancelled by USMS Headquarters, and that Wirshing arranged for the cancellation of plaintiff's scheduled interview for that position. Id. ¶¶ 51-56, 65. Throughout the administrative litigation, plaintiff contended that Wirshing's and Donato's statements at a March 2000 meeting at the Miramar, Puerto Rico office of the USMS Fugitive Task Force in Puerto Rico, evidenced their intent to discriminate against non-Puerto Ricans in promotions. Complaint, ¶¶ 84-96; see Lazar Dec. ¶ 4. Plaintiff's other principal allegation was that Wirshing and Donato created a hostile working environment for plaintiff while he worked in Puerto Rico based on his race, national origin, and his protected EEO activity. Complaint, ¶¶ 98-104, 124-39. Thus, the substantial

majority of the central allegations of this case took place in Puerto Rico. See 42 U.S.C. § 2000e-5(f)(3).

Plaintiff's argument for Virginia being a more appropriate venue than Puerto Rico is unconvincing. Other than maintaining records associated with plaintiff's employment, the only connection to the Eastern District of Virginia is that USMS Headquarters officials, Louie McKinney, the former Special Assistant to the Director of the USMS, and Katherine Mohan, the USMS Personnel Officer, implemented Wirshing's recommendation and cancelled the job announcement for the Puerto Rico position.[4] Importantly, plaintiff does not appear to claim that either McKinney or Mohan harbored any unlawful animus. Moreover, no separate proceedings or actions, other than the administrative act of cancelling the job announcement, occurred in the Eastern District of Virginia.

Plaintiff erroneously contends that he may not be able to secure the testimony of Mr. McKinney and Ms. Mohan if the case is not litigated where they currently work. First, it should be noted that Mr. McKinney, as a private citizen at the time of the administrative hearing who could not have been compelled to attend, voluntarily appeared and can therefore reasonably be expected to appear at any trial in this case in Puerto Rico. See Lazar Dec. ¶ 12. If necessary, like any other witness, his trial testimony could also be presented through a videotape deposition *de benne esse*. Second, although Ms. Mohan was authorized to appear at the administrative hearing

---

[4] The Eastern District of Virginia is a proper venue under the second prong of 42 U.S.C. § 2000e-5(f)(3) because employment records are located at USMS headquarters. The Eastern District of Virginia is not an appropriate venue under the fourth, catch-all provision of 42 U.S.C. § 2000e-5(f)(3) because Puerto Rico is an available venue under the first and third prongs of the statute in that Puerto Rico is where the unlawful practice was allegedly committed and where plaintiff would have worked but for the alleged impropriety.

through deposition due to a previously scheduled conflict, the agency can arrange for her to be present at any trial in Puerto Rico as long as she remains employed.  Accordingly, plaintiff's assertion that he could be deprived of critical testimony rings hollow.

On the other hand, Wirshing and Donato, who are critical witnesses for the defense in this case, may reside in Puerto Rico.  Mr. Donato is no longer employed by the USMS and is unlikely to voluntarily appear at a trial in the Eastern District of Virginia.  Although Mr. Wirshing is currently the U.S. Marshal for the District of Puerto Rico, there is a significant possibility that by the time this case goes to trial, Mr. Wirshing will be retired and may not voluntarily appear in the Eastern District of Virginia.  See Lazar Dec. ¶ 6.  In addition, there are several other relevant witnesses who reside in the District of Puerto Rico.  These witnesses include Jose Garcia, who recently retired from the USMS, as well as Roberto Vizcarrondo, Pedro Velez, Rafael Escobar, Cesar Torres, and Jose Concepcion.  Id. ¶¶ 13-14.  Other witnesses include Javier Jimenez, who is in the Northern District of Florida, Andres Jimenez, who is in the Central District of California, and Robert Sanchez, who is in the Dominican Republic.  Id.  It would be more convenient for Sanchez to travel to Puerto Rico, rather than the Eastern District of Virginia.  For the other two witnesses, there is little difference between their travel to either venue.  Taking the broader view of the witnesses who might be called at trial than plaintiff, it is clear that a substantial majority are currently in Puerto Rico or could be expected to appear there, and for those outside Puerto Rico, it will be at least as convenient for them to travel to Puerto Rico than to Virginia.

Finally, the Court should largely disregard plaintiff's claims that it would be more convenient, and therefore cost-effective, for his counsel to litigate this case in the Eastern District

of Virginia rather than in Puerto Rico. While it may very well be true and appears to be one of his main reasons for seeking venue in the Eastern District of Virginia, the location of counsel carries little, if any, weight in determining venue. Holland, 360 F. Supp.2d at 77, quoting Armco Steel Co. v. CSX Corp., 790 F. Supp. 311, 324 (D.D.C. 1991). Even so, plaintiff's counsel in this case has already traveled on two previous occasions to Puerto Rico to litigate this matter. He traveled once for depositions of three Puerto Rico witnesses. See Lazar Dec. ¶ 9. Later, plaintiff and his counsel traveled to Puerto Rico to participate in the administrative hearing. See id. ¶ 11. As indicated, at no time during the administrative litigation, which spanned nearly four years, did plaintiff or his counsel ever raise any concern about the venue of the administrative litigation or the hardships of travel to Puerto Rico. Id. ¶ 15.

For all of these reasons and those set forth in defendant's motion, the Court should dismiss plaintiff's Complaint or, if it finds that doing so would be in the interests of justice, transfer this action to the District of Puerto Rico.

Dated: April 7, 2006.

        Respectfully submitted,

_____
KENNETH WAINSTEIN, D.C. Bar #451058
United States Attorney

/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

/s/_____
JANE M. LYONS, D.C. Bar #451737
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W., - Room E4822
Washington, D.C. 20530
(202) 514-7161

OF COUNSEL:
JOE LAZAR
D.C. Bar #395396
Associate General Counsel
United States Marshals Service